IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BROOKE L.T., | CV 19-111-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the Commissioner of Social Security ("Commissioner" or "Defendant") on her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq. (Doc. 2.) On September 16, 2019, Defendant filed the Administrative Record. (Doc. 7.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits. (Doc. 14.) The motion is fully briefed and ripe for the Court's review. (Docs. 14, 16, 19.)

For the reasons set forth herein, and after careful consideration of the record

1

and the applicable law, the Court recommends that the Commissioner's decision should be **AFFIRMED**.

## I.    <u>Procedural Background</u>

Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income in July and November of 2014, alleging disability since September 1, 2006. (Doc. 7, at 304-22). Plaintiff later amended her onset date to January 3, 2008. (Doc. 7, at 47.)

Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 7, at 70-125 & 126-43). Plaintiff requested review of the decision, and on June 7, 2017, the Appeals Council granted Plaintiff's request for review. (Doc. 6, at 145.) The Appeals Council vacated the ALJ's decision and remanded the case to the ALJ to (1) proffer post-hearing evidence to the Plaintiff's representative in compliance with SSA procedures; (2) consider and evaluate the report and assessment of the consultative examiner; and (3) and obtain additional evidence concerning Plaintiff's impairments as necessary to complete the administrative record. (Doc. 7, at 145-46.)

On remand, the ALJ reevaluated Plaintiff's disability claim and conducted another administrative hearing. (Doc. 7, at 41-69.) The ALJ again found Plaintiff not disabled under the Social Security Act. (Doc, 7, at 17-32.) Thereafter, Plaintiff

filed the instant action.

## II.   <u>Legal Standards</u>

### A.      **Standard of Review**

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

The Commissioner assesses disability through a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still perform on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's

residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.  <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. The ALJ further found that Plaintiff had not engaged in substantial gainful activity after the

original alleged onset date of September 1, 2006.[1]

At step two, the ALJ found that Plaintiff has the severe impairment of multiple sclerosis ("MS"). (Doc. 7, at 23.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 7, at 24.)

At step four, the ALJ found that Plaintiff had the residual functional capacity to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift and/or carry 10 pounds occasionally, and less than 10 pounds frequently. She can stand and/or walk up to 2 hours total per 8-hour workday, not to exceed 20 minutes standing at one time, and not to exceed walking more than one block at one time. She can occasionally crouch, stoop, balance, and climb stairs. She can never crawl, kneel, or climb ladders/scaffolds. She can frequently finger and handle with her bilateral upper extremities. She must avoid concentrated exposure to extreme cold temperatures, vibrations, and hazards.

(Doc. 7, at 24.)

The ALJ found that Plaintiff had no past relevant work performed within the last 15 years. (Doc. 7, at 30.) Proceeding to step five, the ALJ found based on Plaintiff's residual functional capacity and the vocational expert's testimony and

---

[1] As previously noted, and acknowledged by the ALJ, Plaintiff amended her alleged onset date to January 3, 2008. (Doc. 7, at 20, 47.)

interrogatory responses that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed. (Doc. 7, at 30-31.) Thus, the ALJ found that Plaintiff was not disabled. (Doc. 7, at 31.)

Plaintiff argues the ALJ erred in the following ways: (1) failing to consider Plaintiff's degenerative disc disease, hypothyroidism, pineal cyst, depression, anxiety, and medication side effects in determining Plaintiff's severe impairments; (2) improperly evaluating Plaintiff's symptoms; (3) improperly discounting the medical opinion evidence of Charlene Lewis, FNP, Kathryn Rogotzke, ARNP, and Madelyn Boyle, PA-C; and (4) failing to incorporate all of Plaintiff's impairments into the vocational consultant's hypothetical questioning. (Doc. 14.) The Court addresses each argument in turn.

### A.    Severe Impairments

Plaintiff argues the ALJ erred at step two by finding MS to be her only severe impairment. (Doc. 14 at 17-18.) Under step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R 404.1520(c); 416.920. At the step two inquiry, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

1996)). The Social Security Act defines a "severe" impairment as one "which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290)). The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

Here, Plaintiff claims the ALJ should have addressed the following additional impairments at step two: degenerative disc disease, hypothyroidism, pineal cyst, medication side effects, depression, and anxiety. The ALJ's step two analysis discussed Plaintiff's reported asthma, lung defects, depression, anxiety, incontinence, and GERD. (Doc. 7, at 23.) The ALJ found the impairments were unsupported by evidence or did not present limitations that would interfere with her ability to work. (Doc. 7, at 23.) The ALJ also noted that during the administrative hearing, Plaintiff clarified that multiple sclerosis was her only severe impairment.[2]  (Doc. 7, at 23, 45.) The ALJ therefore found none of

---

[2] The claimant also indicated multiple sclerosis was her only severe impairment at the initial hearing. (Doc. 7-1 at 1241-42.)

Plaintiff's other symptoms constituted severe impairments.

1.  Degenerative Disc Disease

The Plaintiff references three MRI's in support of her claim that the ALJ should have considered her degenerative disc disease a severe impairment. On January 3, 2008, an MRI found abnormal changes throughout Plaintiff's cervical spine with the primary diagnosis identified as MS. (Doc. 7 at 932.) Plaintiff also references MRI's from April 2009 and September 2010. The April 2009 MRI identifies numerous cervical spine lesions resulting in mild associated central canal stenosis (Doc. 7, at 918) and the September 2010 MRI identifies degenerative disc disease, persistent abnormal signal in spinal cord, joint arthropathy, and moderate bilateral narrowing (Doc. 7, at 913.) Plaintiff also cites a treatment note discussing her MS which contains Plaintiff's report that she had shooting pains down her back when she flexed her neck. (Doc. 7, at 879.)

Notably, Plaintiff did not identify degenerative disc disease as an impairment in her disability application. Nor did Plaintiff raise it as an impairment in her administrative hearing before the ALJ. Rather, Plaintiff expressly identified MS as her only severe impairment. (Doc. 7, at 45.) An ALJ "is not obliged to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability." *Mouser v. Astrue*, 545 F.3d 634,

639 (8ᵗʰ Cir. 2008) (internal quotations omitted); *See also Degrave v. Colvin*, 2014

WL 2532284, *7 ( N.D. Cal. Jun. 5, 2014) (finding the ALJ is not required to

"comb the record, searching for potential impairments beyond those asserted by a

claimant."). Even though there is evidence in the record showing that Plaintiff has

degenerative disc disease, the ALJ was not required to address it unless the record

indicated that it imposed limitations on plaintiff's ability to work. *Webb*, 433 F.3d

at 686. The record does not indicate Plaintiff's degenerative disc disease imposed

such limitations. Each of the MRI's Plaintiff cites concern her MS and include

degenerative back changes as ancillary MS symptoms. (Doc. 7, 932, 913, 918.)

And, given Plaintiff's acknowledgement at the hearing that MS is her only severe

impairment, Plaintiff's current position that the ALJ failed to consider her

degenerative disc disease lacks merit and is not a basis for reversing the ALJ's

decision.

    2. Hypothyroidism

    Although Plaintiff did not list hypothyroidism as a condition supporting her

claim of disability, she did undergo endocrine tests in January and May 2008 to

measure her levels of TSH, a thyroid stimulating hormone. (Doc. 7, at 951.)

Plaintiff also had an MRI in March of 2011 which identified a large cyst on her

right thyroid gland. (Doc. 7, at 912.) Plaintiff argues this cyst is evidence of her

hypothyroidism, which she asserts can be caused by the cyst. She does not point to evidence in the record establishing this connection or indicating that her condition imposes work-related impairments. She does not even point to evidence in the record establishing a diagnosis of hypothyroidism. Additionally, as discussed above, Plaintiff did not raise hypothyroidism as a basis for disability at her administrative hearing before the ALJ. For these reasons, the ALJ did not err in failing to find hypothyroidism to be a severe impairment.

3.  <u>Pineal Cyst</u>

Plaintiff next argues the ALJ should have considered her pineal cyst at step two. In August 2014 Plaintiff had a brain MRI which identified a pineal cyst stable in size. (Doc. 7, at 567.) In December 2015 Plaintiff had another brain MRI which again noted the pineal cyst. (Doc. 7, at 848.) The imaging found the cyst to have mildly increased in size with mildly increased protein content. (Doc. 7, at 848.) Plaintiff argues pineal cysts cause symptoms similar to those she experiences and therefore the ALJ should have considered the cyst to be a severe impairment. Plaintiff does not identify where in the record the pineal cyst's effects on Plaintiff or her work-related abilities are discussed. Further, the record indicates Plaintiff's pineal cyst is discussed exclusively in connection with her MS. (Doc. 7, at 568, 848.) Additionally, as discussed above, Plaintiff stated MS was her only severe

impairment at her administrative hearing before the ALJ. Therefore, the ALJ did not err in failing to find Plaintiff's pineal cyst to be a severe impairment.

/ / /

    4.  Medication Side Effects

Plaintiff also argues the ALJ should have discussed the side effects of her medications in determining which of her conditions were severe. (Doc. 14, at 18.) Plaintiff explains that her medications come with a host of side effects including depression, anger, pain, loss of balance, flu-like symptoms, fatigue, cognitive difficulties, spasms, and incontinence. She maintains these symptoms should have been considered as severe impairments and the ALJ's failure to discuss them is reversible error. Plaintiff does not however, support her argument with any citations to the record and does identify any objective evidence that her medications caused side effects interfering with her ability to work. Plaintiff's failure to produce "evidence of side effects severe enough to interfere with [her] ability to work," renders any error by the ALJ in not discussing those side effects harmless. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Additionally, the ALJ did address Plaintiff's incontinence and found it to be non-severe since no work-related limitations would result from Plaintiff's short restroom breaks. (Doc. 7, at 23.)

5.  Depression and Anxiety

Finally, Plaintiff argues the ALJ erred at step two by insufficiently considering her depression and anxiety. Specifically, Plaintiff asserts the ALJ failed to discuss a Neuropsychological Evaluation which found her disabled due to her cognitive disorders, PTSD, and anxiety. (Doc. 14 at 18.) The ALJ briefly addressed Plaintiff's depression and anxiety and found a lack of objective evidence supporting their severity. (Doc. 7, at 23.) The ALJ noted that Plaintiff had "no long-term focal mental health treatment of record" and reiterated that Plaintiff "clarified that the basis for disability was due to multiple sclerosis only." (Doc. 7, at 23.)

The Neuropsychological Evaluation Plaintiff references is not in the record. Instead, Plaintiff cites a treatment note from 2013 which references the evaluation. (Doc. 7, at 871.) But Plaintiff did not supplement the record with the evaluation, and at both administrative hearings Plaintiff indicated she was not alleging her depression and anxiety were severe impairments. At the first administrative hearing the ALJ informed Plaintiff that a psychologist was present by telephone to aid in evaluating her psychological impairments. In response, Plaintiff's counsel stated that there was not enough evidence in the record to show Plaintiff had a psychological impairment. As a result, the ALJ dismissed the psychologist from

14

the hearing and the Plaintiff did not object. (Doc. 7-1 at 10.) The ALJ also asked

Plaintiff's counsel whether, apart from MS and its byproducts, there were any

other impairments to discuss. Plaintiff's counsel replied in the negative: "Most of it

is just MS related. There's some evidence of like a Reynaud's issue but that's often

symptoms of MS so I think the focus should be just to be most specifically on

MS." (Doc. 7, at 11.) At the second hearing, Plaintiff again stated her only severe

impairment was MS. (Doc. 7, at 45.)

Based on the record in this case, it is also apparent that the ALJ did not have

a duty to develop the record by requesting the Neuropsychological Evaluation. The

"ALJ's duty to develop the record further is triggered only when there is

ambiguous evidence or when the record is inadequate to allow for proper

evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

2001). Although Plaintiff believes the ALJ neglected to fully evaluate her

psychological impairments, she does not identify ambiguities in the medical

evidence or explain why the Neuropsychological Evaluation is now material to the

disability determination. (Doc. 14, at 18.) This is particularly puzzling since

Plaintiff felt her depression and anxiety were unworthy of discussion based on a

lack of evidence at the administrative hearings, especially considering Plaintiff did

not object to the ALJ's dismissal of the psychologist at her initial hearing.

Finally, the claimant bears the burden of showing that she had a medically determinable impairment, which can be shown "by medically acceptable clinical and laboratory diagnostic techniques[.]" 42 U.S.C. § 423(d)(3). *See also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Plaintiff could have supplemented the record with the evaluation, brought the evaluation to the ALJ's attention, or maintained that she did suffer from a severe psychological impairment. She abandoned each of these approaches. Plaintiff's argument that the ALJ should have developed the record to include the Neuropsychological Evaluation is therefore inadequate.

The record supports the ALJ's finding that Plaintiff's only severe impairment is MS. A medically determinable physical or mental impairment must be substantiated by medical evidence. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). However, a finding of non-severity at step two does not relieve the ALJ from further considering an impairment when determining the residual functional capacity. 20 C.F.R. § 404.1545(1)(5)(i). Even if the ALJ had erred by not identifying additional impairments as severe at step two, any such error would be harmless. The ALJ found Plaintiff had MS and continued with the disability evaluation. In that evaluation, the ALJ considered severe and non-severe limitations caused by Plaintiff's impairments, including depression, anxiety, fatigue, memory loss, poor balance, and numbness. The ALJ specifically

16

considered all these ailments in formulating Plaintiff's residual functional capacity. (Doc. 7, at 132-136.) *See Baldwin v. Astrue*, 2010 WL 1946902 (C.D. Cal. May 10, 2010) (finding an ALJ's error at step two to be harmless where "the ALJ accounted for the symptoms and limitations allegedly caused by her [impairment] in his residual functional capacity determination at step four").

### B.    The ALJ's Evaluation of Plaintiff's Symptoms

Plaintiff argues the ALJ failed to properly evaluate Plaintiff's impairments by discounting her subjective testimony without providing sufficiently clear and convincing reasons supported by medical evidence in the record. Plaintiff testified that she used to work as a preschool teacher but has only performed substitute teaching on occasion since her condition worsened. (Doc. 7, at 49.) She discussed her MS symptoms and testified that they have become worse over time. For example, she testified that her memory and her ability to manipulate objects with her hands has deteriorated. (Doc. 7, at 49.) Plaintiff also testified that her fatigue and balance have worsened, and she is not able to engage in some of the activities she previously had. (Doc. 7, at 49.)

Plaintiff testified that on a typical day she wakes up around six o'clock in the morning, packs lunches for her kids, lets the dog out, feeds the dog, plays a brain training game, has coffee, gets her kids up, helps her five-year old get ready,

17

and gets herself ready. (Doc. 7, at 52.) She leaves the house around eight o'clock to drop her kids off at school. Sometimes she will run an errand, but usually she comes back home until she leaves again to pick up her kids. (Doc. 7, at 52.) Plaintiff testified that she either makes dinner alone or with her kids. She tries not to perform any cutting or chopping herself because she is nervous that she will accidentally cut herself since she cannot feel the knife or manipulate it well. (Doc. 7, at 52.) Plaintiff also testified that she works out at home a couple of times per week by performing exercises that do not require her to balance. She uses five-pound weights and can safely lift eight pounds, but she does not perform her exercises as regularly as she used to because her symptoms have worsened. (Doc. 7, at 54, 60.)

Plaintiff also testified regarding the MS "flares" she experiences. She explained that a flare can include various symptoms; sometimes her memory deteriorates so significantly that she needs someone else to drive her around, take care of her kids, and cook dinners. (Doc. 7, at 57-58.) Her memory loss makes it difficult for her to remember some things, and once caused her to accidentally light herself on fire when she was cooking because she could not remember which burner was on or what she was doing. (Doc. 7, at 58.) Her more recent flares include forgetting dates and walking with imbalance. (Doc. 7, at 59.) Plaintiff

testified that her flares can last for as little as two hours or for weeks on end. (Doc. 7, at 59.) She could not testify as to how often her flares occur because she felt like there was not an average by which to measure them. However, she did testify that she has not had a flare severe enough to go to the doctor for care in the past two years. (Doc. 7, at 60.)

The ALJ analyzes a claimant's subjective symptom testimony in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Vasquez*, 572 F.3d at 591. If the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Vasquez*, 572 F.3d at 591.

Here, the first step of the credibility analysis is not in issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, and there is no argument the Plaintiff is malingering. (Doc. 7, at 25.) Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her symptoms. The ALJ found

Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible for several reasons. (Doc. 7, at 25.)

First, while ALJ recognized that Plaintiff's waxing and waning MS did cause functional limitations, he pointed out that the medical evidence did not establish those limitations prevented Plaintiff from working. (Doc. 7 at 25.) For example, the ALJ identified a nerve test performed on Plaintiff's hands that resulted in largely unremarkable findings and was deemed an essentially normal study. (Doc. 7, at 927-28.) The ALJ also pointed to records showing overall stability in Plaintiff's condition. In 2008, an MRI of Plaintiff's cervical spine found "significant improvement in the long focal cord lesion from C3 to C5 level on the previous study." (Doc. 7, at 925.) In 2009, Plaintiff underwent another MRI that identified numerous cord lesions consistent with MS but found the lesions to be "generally stable." (Doc. 7, at 918.) Cervical and brain MRI's conducted in 2010 did not reveal new abnormalities. (Doc. 7, at 910, 913.) Although new lesions were found in 2011 and January 2013, by August 2013 an MRI found "stable sequelae of multiple sclerosis. No new or actively demyelinating lesions." (Doc. 7, at 900, 901, 911.)

The ALJ also discussed evidence showing Plaintiff's symptoms improved with treatment. (Doc. 7, at 25.) It is proper for an ALJ to consider evidence demonstrating that claimant's condition improved in response to treatment. 20 C.F.R. §§ 404.1529(c)(3)(v); *Tommasetti*, 553 F.3d at 1040; *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003). Plaintiff reported improvement after she was prescribed medication to control her MS symptoms. (Doc. 7, at 896.) The ALJ also considered the assessment of Plaintiff's physician, Dr. Downs, after Plaintiff had been on medication for a few weeks. Dr. Downs noted that although Plaintiff feels uncomfortable giving herself medication injections, her memory problems improve when she regularly administers the medication. (Doc. 7, at 895.)

The ALJ also cited medical records indicating Plaintiff was functioning normally both physically and mentally. (Doc. 7, at 27.) In July 2014, Plaintiff underwent a physical examination which found no abnormalities. (Doc. 7, at 561.) In March 2016, Plaintiff denied any new symptoms, stated she was not feeling depressed, and is sometimes fatigued. (Doc. 7, at 578.) An examination found no motor impairments and mild to moderate sensory impairments. (Doc. 7, at 579.) Additional medical records further support the ALJ's conclusion that although Plaintiff continued experiencing waxing and waning MS symptoms, her subjective complaints as to the disabling severity of her symptoms were undermined by

evidence in the record showing overall symptom stability and improvement with treatment. (Doc. 7, at 660 (noting Plaintiff reports mildly worse cognition but also reports that her hand numbness is stable); Doc. 7, at 683 (Plaintiff reports that she is tolerating her medication well and denies any new symptoms); Doc. 7, at 1159-80 (continued evidence of Plaintiff's MS symptom stability); Doc. 7, at 1170 (physical exam finds Plaintiff's fine hand movements are quick bilaterally).

Next, the ALJ found Plaintiff's alleged limitations were not entirely consistent with her reported level of activity. An ALJ may discount a claimant's subjective complaints about her symptoms when they are inconsistent with her activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ pointed out that Plaintiff complained about taking her medication because her schedule did not allow it. Plaintiff explained that she was "very active" and "taking her kids around constantly." (Doc. 7, at 26, 884.) Additionally, when Dr. Downs offered Plaintiff a vocational rehabilitation referral, Plaintiff stated she could not participate in vocational rehabilitation because she does not have childcare. (Doc. 7, at 877.) An ALJ may consider evidence that a claimant stopped working for reasons unrelated to disability when discounting subjective symptom testimony. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). The Plaintiff's reported level of activity led the ALJ to reasonably conclude that Plaintiff's activities of daily living allowed her

to care for her young children, "which can be quite demanding both physically and emotionally, without any particular assistance." (Doc. 7, at 26.) Although Plaintiff's activities may be somewhat limited, the ALJ reasonably found that they were inconsistent with her claim that she is unable to work due to her MS symptoms, including fatigue, poor balance, memory loss, and numbness.

Ultimately, the Court finds that the ALJ reasonably explained how the medical records and Plaintiff's activities contradicted her testimony. The ALJ found Plaintiff's testimony regarding the severity, persistence, and limiting effects of her symptoms were "not entirely consistent," and he cited specific evidence in the record which he interpreted to contradict Plaintiff's testimony. Although this Court may not evaluate the evidence in the same way as the ALJ, the Court may not substitute its own, or the Plaintiff's, interpretation of the evidence for the ALJ's reasonable interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th. Cir. 2002). Therefore, the Court finds that the ALJ's credibility finding is properly supported by specific, clear and convincing reasons.

### C.    Medical Opinion Evidence

The administrative record contains several medical opinions and records that are relevant to Plaintiff's physical and mental functioning during her alleged period of disability. Plaintiff does not challenge the ALJ's evaluation of each medical

23

source opinion. Instead, she argues the ALJ erred in evaluating the statements from Charlene Lewis, NP, Kathryn Rogotzke, ARPN, and Madelyn Boyle, PA-C. The Commissioner counters that the ALJ provided germane reasons for discounting the statement from each of these sources.

After this claim was filed in 2014, the SSA amended its regulations for evaluating other source medical evidence. However, the amended regulations only apply to claims filed on or after March 27, 2017. As a result, the prior regulations apply to this case. The SSA provided guidance on applying the prior rules in claims filed before March 27, 2017. In its guidance, the agency explained that it rescinded four SSRs and incorporated the policies in those SSRs into the rules applicable to claims filed before March 27, 2017. Plaintiff takes issue with the ALJ's citation to one of the rescinded SSR's, SSR 06-03p. However, the policies in SSR 06-03p were incorporated into 20 C.F.R. §§ 404.1527(f) and 416.927(f). Therefore, the only error the ALJ made was citing the incorrect authority. Such error is harmless. HALLEX 1-5-3-30 (S.S.A.).

Pursuant to the regulations applicable to this case, nurse practitioners and physicians' assistants are not "acceptable medical source" and are instead considered "other sources." 20 C.F.R. §§ 404.1527(f)(1); 416.927(f); 416.902. Other sources cannot give medical opinions but can provide evidence about the

severity of a claimant's impairments and how they affect the claimant's ability to work. 20 C.F.R. §§404.1527(f)(1); 416.927(f); 416.902. While an ALJ must provide specific and legitimate reasons based on substantial evidence to discount evidence from an "acceptable medical source," evidence from an "other source" is not entitled to the same deference and may be discounted if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

### 1.   Charlene Lewis, NP

Plaintiff argues the ALJ failed to appropriately consider nurse practitioner Charlene Lewis' opinion because he did not evaluate it according to the factors enumerated in 20 C.F.R. § 404.1527(c)(1)-(6). Pursuant to the regulations, while the ALJ should consider Lewis' opinion under the factors found at 20 C.F.R. § 404.1527(c)(1)-(6), "not every factor for weighing opinion evidence will apply in every case" and "depends on particular facts in each case." 20 C.F.R. §§404.1527(f)(1).

In February 2015, Lewis conducted a consultative examination of Plaintiff concerning MS, incontinence, and Raynaud's syndrome. (Doc. 7 at 570.) Lewis completed a physical exam which found Plaintiff's coordination and fine motor skills to include jerky movements. (Doc. 7, at 571.) Lewis then stated that

Plaintiff's "grip strength is normal and gross handling and fine fingering at this point is within normal limits." (Doc. 7, at 572.) Lewis also described Plaintiff's gait as "significantly ataxic and jerky and she does not use a cane but do feel eventually in near future she will need one[.]" (Doc. 7, at 572.) Finally, Lewis opined that Plaintiff can stand for five to ten minutes at one time, but her jerky movements and involuntary muscle contraction require her to reposition. (Doc. 7, at 572.)

The ALJ discounted Lewis' opinion for multiple reasons. First, the ALJ found it was not consistent with the record. Although Lewis opined that Plaintiff could only stand for five to ten minutes at one time and should use an assistive device to prevent falls, the ALJ pointed to the overall record which demonstrated Plaintiff's gait is generally normal and has improved over time. (Doc. 7, at 28.) The ALJ also discounted Lewis' opinion because it was based on Plaintiff's subjective complaints during a one-time examination by an unacceptable medical source. (Doc. 7, at 28.) Consistent with the ALJ's reasoning, Lewis did not order objective testing to measure Plaintiff's abilities. (Doc. 7, at 572.) Additionally, the ALJ's reasons for discounting Lewis's opinion include the following 20 C.F.R. § 404.1527(c)(1)-(6) factors: treatment relationship, length of treatment relationship and the frequency of the examination, nature and extent of the treatment

relationship, and consistency. The ALJ reasonably discounted the limitations identified by Lewis for the germane reasons that she had only seen Plaintiff once, imposed extreme limitations inconsistent with the overall medical record, and seemed to rely on Plaintiff's subjective complaints.

### 2. Kathryn Rogotzke, ARPN

Plaintiff argues the ALJ failed to appropriately consider nurse practitioner Kathryn Rogotzke's opinion because he did not evaluate it according to the factors enumerated in 20 C.F.R. § 404.1527(c)(1)-(6). As previously explained, while the ALJ should consider Rogotzke's opinion under the factors found at 20 C.F.R. § 404.1527(c)(1)-(6), "not every factor for weighing opinion evidence will apply in every case" and "depends on particular facts in each case." 20 C.F.R. §§404.1527(f)(1).

In November 2015, Rogotzke completed a Multiple Sclerosis Residual Functional Capacity Questionnaire on which she indicated that Plaintiff could only walk ten blocks, sit up to one hour, stand for five minutes at a time without stiffening, and would need five-minute breaks every three to four hours, or hourly if she became stiff. (Doc. 7, at 596.) Rogotzke also opined that Plaintiff could frequently lift twenty pounds but had difficulty with fine motor skills due to weakness, muscle spasms, and numbness. (Doc. 7 at 596.) Finally, she estimated

Plaintiff would be absent from work about four days per month due to her impairments. (Doc. 7, at 597.)

The ALJ gave Rogotzke's opinion little weight because it indicated Plaintiff had no musculoskeletal or neurological symptoms since July 2014. (Doc. 7, at 28.) The ALJ therefore inferred that the limitations imposed by Rogotzke stemmed from the Plaintiff's subjective reports, which are not supported by her activities of daily living. (Doc. 7, at 28.) Consistent with the ALJ's reasoning, Rogotzke indicated Plaintiff had not experienced any exacerbations of MS since before she established care with Rogotzke in July 2014. (Doc. 7, at 592-93.) Further, during Plaintiff's visits with Rogotzke, Plaintiff reported she was "feeling great", her physical exams were normal, and Rogotzke reported Plaintiff's "fine movements in the hands are quick bilaterally" and her "coordination and gait [are] normal." (Doc. 7, at 29, 1159-61, 1164-65.) These notes suggest Plaintiff was a capable of more than the limitations Rogotzke identified in the questionnaire. Additionally, "[t]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Allshouse v. Colvin*, 2013 WL 2949955, *6 (D. Mont. Jun. 14, 2013) (quoting *Thomas v.* Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)). The ALJ reasonably discounted the limitations for the germane reasons that Rogotzke seemed to rely in large part on Plaintiff's

subjective complaints, the limitations were inconsistent with Plaintiff's daily activities, and unsupported by clinical findings.

    3.    <u>Madelyn Boyle, PA-C</u>

Plaintiff next argues the ALJ erred by not giving more weight to the opinion of physicians' assistant, Madelyn Boyle. Plaintiff contends the ALJ likely used SSR 06-3p in his evaluation and did not utilize 20 C.F.R. § 404.1527 in weighing Boyle's opinion.

In January 2018, Boyle completed a Multiple Sclerosis Residual Functional Capacity Questionnaire in which she opined that Plaintiff could stand for ten minutes before needing to move around and could sit and walk for less than two hours in an eight-hour workday. (Doc. 7, at 1207-13.) Boyle also opined that Plaintiff needs to take two to three breaks lasting fifteen to thirty minutes during an eight-hour workday and can rarely lift ten pounds. Boyle predicted Plaintiff would likely miss four days of work per month. (Doc. 7, at 1207-13.)

The ALJ afforded Boyle's opinion minimal weight. The ALJ noted that Boyle had only examined Plaintiff twice and found her examination findings inconsistent with the limitations she identified in the questionnaire. The ALJ also found Boyle's opinion inconsistent with the overall record. (Doc. 7, at 30.)

Boyle's opinion states that Plaintiff has only been her patient for three

months and she has only evaluated Plaintiff twice. (Doc. 7, at 1207-08.) Both evaluations occurred in November 2017. (Doc. 7, at 1209.) Moreover, Boyle's treatment notes reflect that Plaintiff's gait was normal without ataxia, she had normal motor and cerebellar function, and Plaintiff had no new neurologic complaints. (Doc. 7, at 1224-29.)

The ALJ reasonably discounted the limitations identified by Boyle for the germane reasons that she did not have a lengthy treatment history with the claimant and her examinations returned findings inconsistent with the limitations she identified in the questionnaire. Additionally, the ALJ's reasons for discounting Boyle's opinion include the following 20 C.F.R. § 404.1527(c)(1)-(6) factors: treatment relationship, length of treatment relationship and the frequency of the examination, nature and extent of the treatment relationship, and consistency.

### D.     Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of a particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then

the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Plaintiff argues the ALJ's residual functional capacity finding and the resulting hypothetical question were incomplete, and the vocational expert's testimony consequently cannot be relied upon to deny benefits. Had the ALJ included the limitations that Plaintiff needed additional breaks, would be absent from work more than twice per month, and could only occasionally handle and finger, Plaintiff argues the vocational expert would have found her to be precluded from any substantial gainful employment. It also appears Plaintiff argues the ALJ erred by submitting a hypothetical question to the VE post-hearing.

As discussed above, the Court has determined the ALJ properly weighed the medical evidence and adequately supported his reasons for discounting Plaintiff's testimony. Having done so, the ALJ found that Plaintiff could perform sedentary work and the vocational expert identified three jobs a person with the Plaintiff's age, education, work experience, and residual functional capacity would be able to perform. The ALJ asked the vocational expert whether jobs existed in the national economy for a person with Plaintiff's residual functional capacity via post-hearing interrogatories proffered to the claimant. (Doc. 7, at 491.) Plaintiff did not respond to the proffer before the ALJ issued his decision. (Doc. 7, at 496-97.)

31

The ALJ adequately accounted for Plaintiff's limitations by incorporating exertional limitations into the residual functional capacity assessment. For example, the ALJ found Plaintiff could only stand or walk up to two hours in an eight-hour workday, "not to exceed 20 minutes standing at one time, and not to exceed walking more than one block at one time[.]" (Doc. 7, at 24.) Additionally, as previously discussed, the ALJ's finding that Plaintiff can frequently finger and handle with her bilateral upper extremities is supported by the record. Finally, "the Ninth Circuit has held that it is within an ALJ's discretion to seek additional V[ocational] E[xpert] testimony." *Boomhower v. Berryhill*, 2017 WL 7167116, * 6 (D. Or. Oct. 25, 2017) (citing *Leazenby v.* Colvin, 654 Fed.Appx. 301, 302 (9ᵗʰ Cir. 2007)). There is no indication that the ALJ's interrogatory request constituted a violation of law or SSA policy. Rather, the ALJ provided Plaintiff the opportunity to respond to the interrogatories, submit additional evidence, and request a supplemental hearing. (Doc. 7, at 496.) Plaintiff did not exercise any of these options.

Accordingly, the Court finds the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found credible and supported by evidence in the record. *See Magallanes*, 881 F.2d at 756 (the ALJ need not include limitations not supported by substantial evidence). Therefore, the

Court finds the ALJ's determination at step five is supported by substantial evidence.

## IV.    <u>Conclusion</u>

Based on the foregoing, the Court finds the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly, **IT IS ORDERED** that the Commissioner's decision denying Plaintiff's claims for disability insurance benefits and supplemental security income benefits is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 14) is **DENIED**.

DATED this 16th day of April, 2020.


_____
Kathleen L. DeSoto
United States Magistrate Judge